IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| | : |
| V. | : No.: 2:23-cr-00239-GJP-002 |
| | : |
| | : |
| AHMEEN MURRAY | : |

Ahmeen Murray's Sentencing Memorandum

Ahmeen Murray stands before the Court having accepted responsibility for very serious offenses which have had a profound effect on his victims. He recognizes that his conduct has deeply hurt the victims. He stands before the Court contrite and ashamed. The government and Mr. Murray have agreed that a sentence of 136 months is an appropriate resolution of this matter. For the reasons set forth in this memorandum, the pre-sentence report, the government's sentencing memorandum and any arguments made at his sentencing hearing, Mr. Murray respectfully requests the Court to accept this "C" plea.

Mr. Murray, who is prepared for whatever decision the Court makes, asks the Court to balance the seriousness of his offense against his character, contriteness and his acceptance of responsibility, in addition to other factors detailed below and in the pre-sentence report, and sentence him to the agreed upon "C" plea as this is sufficient, but not greater than necessary to satisfy the sentencing goals of § 3553(a)(2).

*History and Characteristics*

In Mr. Murray's case, a consideration of his history and characteristics show that the "C" plea is an appropriate resolution of this matter. Specifically, his acceptance of responsibility, personal growth since his arrest, his feelings of remorse and shame, his understanding of the impact his conduct has had on others. The above show that Mr. Murray, even when balancing the seriousness of his offense can redeem himself, stay out of the criminal justice system and support his family.

As the Supreme Court noted most recently in Pepper, these details of Mr. Murray's life are considerations that are "highly relevant – if not essential – to the selection of an appropriate sentence." *Pepper*, U.S., 131 S. Ct. at 1240.

*Ahmeen Murray's Personal Circumstances*

Ahmeen Murray is a twenty-nine (29) year old father of three with only one prior conviction. He was raised by is mother and they lived at his grandmothers house. He admittedly was poor while growing up and they struggled financially. They "didn't have much" and it was "rough." PSR ¶57. Growing up, his father was incarcerated for twenty (20) years, PSR ¶58, and wasn't really involved in his life.

Mr. Murray has three children all of whom he supported prior to his

2

incarceration. Mr. Murray deeply loves his children. By all accounts, Mr. Murray is a great father, whose children love him.

Mr. Murray has a significant history of substance abuse. Reviewing the PSR it seems as if he has abused almost every drug out there. He started with marijuana and alcohol and this eventually lead to more serious drugs. He has previously received treatment, yet during the events of this Indictment, he was significantly impaired from illicit drugs.

As detailed in the PSR, Mr. Murray has worked as a packager, a dishwasher, a prep cook, a delivery driver and as a mail-service associate. Willingness and ability to work is not really an issue with Mr. Murray. While future employment opportunities will be greatly limited due to the conviction in this case, Mr. Murray is willing to work. As detailed below, he needs to learn a skill or trade in order to make himself both more marketable and in order to make a decent wage.

*Statutory Objectives*

Of the goals set out in 18 U.S.C. 3553(a)(2), the Court must carefully consider the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrents to criminal conduct; to protect the public from further crimes of the defendant; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct 18 U.S.C. ' 3553(a)(2). However, if the Court believes a sentence is reasonable given the nature and circumstances of the offense, the personal history and

characteristics of the defendant, and the additional factors set forth in 18 U.S.C. 3553(a), the sentence may be outside of the Guidelines range. *U.S. v. Watson*, 385 F. Supp. 2d 534, 537 (E.D. Pa. 2005), *aff'd,* 482 F.3d 269 (3d Cir. 2007). Here, Mr. Murray's history and characteristics weigh heavily in favor of the proffered "C" plea.

Mr. Murray, is facing a significant amount of time in a Federal correctional facility. During his incarceration, he has recognized how the loss of his liberty, loss of financial earning capability, loss of ability to maintain contact with his family and friends not to mention the stress these events have had on his relationships are all consequences of his own actions. Mr. Murray does not seek to justify or minimize his actions. The Court, however, should recognize that Mr. Murray was under the influence of illicit substances at the time of this conduct. While not an excuse, it is believed that this contributed to his regretful conduct. Consequently, a sentence to the negotiated "C" plea is sufficient, but not greater than necessary to satisfy the sentencing goals of § 3553(a)(2).

### *Recidivism*

Of the collection of concerns that are presumably most important to the Court, it is the consideration of the need to protect the public from further crimes of Mr. Murray. Given his personal characteristics, specifically, his remorse and recognition of the effect his conduct has had on the victims in this case, it is believed that Mr. Murray is an extremely good candidate to not recidivate. In imposing a sentence sufficient but not greater than necessary to account for the

need to protect the public from further crimes of Mr. Murray, this Court should consider his personal growth, acceptance of responsibility and recognition of the negative consequences on others resulting from his conduct and sentence him to the agreed upon "C" plea.

*Deterrence*

Another consideration of concern to the Court is ensuring adequate deterrence to criminal conduct. Mr. Murray's prosecution and conviction for this case, along with the risk of a serving the significant prison term that could be imposed, provides a more-than-adequate general deterrent to Mr. Murray and other, similarly-situated individuals. Moreover, research has consistently shown that while the certainty of being caught and punished has a deterrent effect, increases in severity of punishments do not yield significant (if any) deterrent effects. Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006). Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence. *Id.*; *see also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007) ([C]ertainty of punishment is empirically known to be a far better deterrent than its severity.). Typical of the findings on general deterrence are those of the Institute of Criminology at Cambridge University. *See* Andrew von Hirsch *et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999), summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF.  The report, commissioned by

5

the British Home Office, examined penalties in the United States as well as several European countries. *Id*. at 1. It examined the effects of changes to both the certainty and severity of punishment. *Id*. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance." *Id*. at 2. The report concluded that the studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects. *Id*. at 1. Research regarding white collar offenders in particular (presumably the most rational of potential offenders) found no difference in the deterrent effect of probation and that of imprisonment. *See* David Weisburd *et al.*, *Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes*, 33 Criminology 587 (1995); *see also* Gabbay, *supra*, at 448-49 ([T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders.). According to the best available evidence, . . . prisons do not reduce recidivism more than noncustodial sanctions. Francis T. Cullen *et al., Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*, 91 Prison J. 48S, 50S-51S (2011). In imposing a sentence sufficient to account for general deterrence, this Court should consider the scientific evidence which concludes that there is no evidence to support the idea that longer sentences serve a general deterrent to criminal activity. As such, a sentence to the agreed upon "C" plea is sufficient, but not greater than necessary to satisfy the sentencing goals of § 3553(a)(2).

*Mr. Murray's Educational, Vocational and or Treatment Needs*

Mr. Murray graduated from Frankford High School. During the 2012 an 2013 school years, he received all A's and B's for grades. PSR ¶72. Mr. Murray could benefit from vocational training as this would assist him in release by enabling to secure a well paying job, such as a welder or CDL driver. Such a well paying job will assist in his rehabilitation as it will help him to support not just himself, but his family. The agreed upon "C" plea would help achieve those ends as it is sufficient, but not greater than necessary to satisfy the sentencing goals of § 3553(a)(2).

*Guideline Calculations*

The PSR has properly and accurately calculated Mr. Murray's guidelines. He has a Total Offense Level of 27. PSR ¶42.

Mr. Murray's Criminal History Score is one (1) and therefore, his Criminal History Category is I.   PSR ¶45-46.

Accordingly, his advisory guideline range is 70 to 84 months. PSR ¶82.  With the application of the mandatory minimum,  which must be run consecutive, the effective advisory guideline range becomes 154 to 171. This advisory range is approximately equivalent to an offense level of 34. The "C" plea of 136 months is in the middle of the range for a offense level of 32. Thus, the agreed upon "C" plea, basically, incorporates a minor reduction of the offense level by two (2) points.

*Sentence Recommendation*

It is respectfully requested that this Court accept and impose the negotiated

sentence in this matter pursuant to Federal Rule of Criminal Procedure 11 (c)(1)(c) of one hundred and thirty-six (136) months incarceration, a fine, five (5) years supervised release and a $400 special assessment. As indicated above, this sentence is essentially a 2 level departure from the guidelines. In this matter, it is believed that the government will argue, is justified because it allows the victims in this matter the relief from having to testify. While not a recognized reason for a downward departure, it is certainly an appropriate consideration for acceptance of a "C" plea as it is slightly below the advisory guidelines. Such a sentence would be sufficient, but not greater than necessary to satisfy the sentencing goals of § 3553(a)(2).

*No Ability to Pay Fine*

Mr. Murray is unable to pay any fine and is not likely to become able to pay a fine. 18 U.S. Code §3572, sets forth the factors to be considered in determining the imposition of a fine. It reads, in relevant part, as follows:

(a) Factors To Be Considered.—In determining whether to impose a fine, and the amount, time for payment, and method of payment of a fine, the court shall consider, in addition to the factors set forth in section 3553(a)—

(1) the defendant's income, earning capacity, and financial resources;

(2) the burden that the fine will impose upon the defendant, any person w is financially dependent on the defendant, or any other person (including a government) that would be responsible for the welfare of any person financially dependent on the defendant, relative to the burden that alternative punishments would impose;

(3) any pecuniary loss inflicted upon others as a result of the offense;

(4) whether restitution is ordered or made and the amount of such restitution;

8

(5) the need to deprive the defendant of illegally obtained gains from the offense;

(6) the expected costs to the government of any imprisonment, supervised release, or probation component of the sentence;

…

(b) Fine Not to Impair Ability to Make Restitution.—
If, as a result of a conviction, the defendant has the obligation to make restitution to a victim of the offense, other than the United States, the court shall impose a fine or other monetary penalty only to the extent that such fine or penalty will not impair the ability of the defendant to make restitution.
…

"The court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5e1.2(a) (2014). Where the defendant presents such evidence, the District Court is required to make findings on the defendant's ability to pay. *United States v. Kadonsky*, 242 F.3d 516, 519 (3d Cir. 2001). Further, "[i]f the defendant comes forward with [evidence from which the Court could find it more likely than not that any fine would remain unpaid], the Court may not impose a fine without making findings concerning the defendant's ability to pay it. The burden of persuasion is on the defendant to show that an inability to pay will be more likely than not." *United States v. Kadonsky, 2*42 F.3d at 520 (citations and internal quotation marks omitted).

The District Court should consider, *inter alia*, the defendant's financial situation and earning capacity, the burden of the fine on the defendant and other dependents relative to alternative punishments, any pecuniary loss caused by the offense, any restitution due, and the expected governmental costs of the sentence.

9

18 U.S.C. §3572(a); U.S.S.G. §5E1.2(d); *see United States v. Torres,* 209 F.3d 308, 313 (3d Cir. 2000)(stating that the "sentencing court must consider an array of factors" under U.S.S.G. § 5E1.2(d) and 18 U.S.C. §§ 3572(a) and 3553(a)).

The Court must consider future earning capacity also. "Future earning capacity is obviously an appropriate factor to consider. The possession of specialized skills or an advanced degree which might enable one to acquire a well-paying job upon release from prison are factors which courts have considered in determining ability to pay. *United States v. Seal*, 20 F.3d 1279, 1284 (3d Cir. 1994)(citing and quoting *United States v. Blackman*, 950 F.2d 420, 425 (7th Cir.1991); *United States v. Ruth*, 946 F.2d 110, 114 (10th Cir.1991) (both affirming courts' reliance on potential earning capacity in imposing a fine).

The PSR indicates that Mr. Murray does not currently have the ability to pay a fine. PSR ¶78. An analysis of Mr. Murray supports this conclusion. Mr. Murray does not currently have the means to pay a fine. He has no assets and has been incarcerated for over one (1) year.

He has been deemed indigent by the Court for purposes of counsel and has CJA appointed counsel to represent him. See PSR ¶209-213. Under such circumstances, a finding that the defendant is unable to currently pay a fine is appropriate. *United States v. Robinson*, 20 F.3d 1030 (9th Cir. 1990)(District Court found Defendant unable to pay fine where Defendant represented by appointed counsel and PSR found defendant did not have ability to pay fine).

Further, when considering future earning capacity, currently, the defendant is an unskilled high school graduate. His earning potential is probably below the

10

poverty level. Further, a fine impose an undue on the defendant and his three children.

With these considerations in mind, there is little point in imposing a fine as it is not reasonable and does not serve the purposes of the guidelines. *United States v. Granados*, 962 F.2d 767, 773-74 (8th Cir. 1992); *United States v. Hodges*, 99110 F.3d 250, 251-52 (5th Cir. 1997)(if sentencing court adopts the PSR and the PSR indicates defendant has a limited or no ability to pay fine, court cannot impose fine unless government comes forward with facts showing defendant can pay).

*Restitution*

While the government has requested restitution and it is part of the agreed upon "C" plea, to date, the government had not provided any amount that they will request.

*Recommendation for BOP Facility*

Mr. Murray respectfully requests the Court recommend that the BOP incarcerate him in a facility as close as possible to Philadelphia. Mr. Murray has three (3) young children in the area, as well a numerous family and friends. Incarceration close to the Philadelphia area would lessen the effect of Mr. Murray's incarceration on his loved ones, in addition to providing Mr. Murray with the ability to see his family during his incarceration.

*Conclusion*

Even when the Sentencing Guidelines were mandatory, sentencing courts were to treat those before them as individuals. See *Koon v. United States*, 518 U.S. 81, 113 (1996) (It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.). The decision in *Booker* and the command of the statute to impose a sentence that is sufficient, but not greater than necessary, has given sentencing courts greater latitude to impose a sentence that fits not only the crime, but also the person before the Court.

Ahmeen Murray can and will rehabilitate and redeem himself. He has already begun this journey. He is extremely remorseful. He is very aware that his conduct has directly negatively effected others. The offense conduct has had an extreme and perhaps long lasting effect on the victims. He also recognizes the effect it has had on his family and friends. He is especially disappointed and ashamed of himself when he thinks of his children and how he has let them down by not being there for them. His children miss him and this deeply hurts Mr. Murray.

This Court, with these considerations in mind, in addition to the arguments in this memorandum and any made in open court, should accept and impose the agreed upon "C" plea. When the offense conduct os balanced against the character and history of Mr. Murray, the agreed upon "C plea" is appropriate.

                                                          Respectfully submitted,

                                                          The Reynolds Firm, LLC

Dated: September 20, 2024              By: _/s/_*Coley O. Reynolds*___
                                                          Coley O. Reynolds, Esquire
                                                          Counsel for Ahmeen Murray
                                                          Atty ID No.: 87923
                                                          121 S. Broad Street, Suite 1200
                                                          Philadelphia, PA 19107
                                                          267-710-1177
                                                          cor@reynoldsfirm.com

<u>Certificate of Service</u>

I, Coley O. Reynolds, Esquire, counsel for Ahmeen Murray, hereby certify a true and correct copy of the attached sentencing memorandum has been served upon the following on the date indicated:

Anthony J. Carissimi, Esquire<br>
Assistant United States Attorney<br>
United States Attorney's Office<br>
615 Chestnut Street<br>
Suite 1250<br>
Philadelphia, PA 19106<br>
(<i>via Email and ECF</i>)

Dated: September 20, 2024         _/s/_Coley O. Reynolds__
                                  Coley O. Reynolds, Esquire